KHOSROVSCHAHI & Co. *v.* UNITED STATES (No. 4654) [1]

United States Court of Customs and Patent Appeals, June 5, 1951.

*B. A. Levett* for appellant.

*David N. Edelstein,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* special attorney, of counsel), for the United States.

[Submitted on brief April 11, 1951]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, entered in accordance with its decision, Abstract No. 54347, 24 Cust. Ct. 469, overruling the protest of. appellant and affirming the action of the Collector of Customs in the assessment of duty on certain imports. It was submitted here on briefs without oral argument of counsel.

---

[1] C. A. D. 460.

The facts are not in dispute and are summarized in a memorandum of the Collector of Customs dated December 16, 1948, the relevant portions of which we herewith quote:

This protest is lodged against the Collector's action in liquidating for duty certain Camels Hair Wool that was imported to be used in the manufacture of floor coverings and other articles. Entries were made on customs Form 7501 Free Consumption Entry under a Wool Bond.

In this instance the importer's general term bond was used. No duty or estimated deposit of duty was taken at time of entry because of the importer's intention to use the merchandise in the manufacture of certain specified articles. The merchandise was delivered to the importer without the payment of estimated duties because of his posting of the carpet wool bond. The merchandise was taken out of customs custody by reason of this delivery and was kept by and for the account of the importer in some storage place but not in a U. S. Customs bonded warehouse.

After a certain lapse of time, the importer did export the merchandise herein, but it was not done under Customs Supervision.

The terms and conditions of the bond not having been complied with, the Collector at New York, under the date of July 25, 1946, wrote to the Bureau of Customs for instructions relative to the assessment of duty and also penalty on the bond. Under date of September 3, 1946, the Bureau replied, advising the Collector to proceed with a demand for liquidated damages for failure to comply with the terms of the bond and duties should be assessed on the merchandise in accordance with sec. 10.91 (a), Customs Regulations of 1943.

Under date of September 17, 1946, the importer was notified that, as he had not complied with the terms of his bond, full duty and the penalty under the bond had now become due and the duty and penalty were demanded from the importer. Importer was notified also that under sec. 623 of the Act he could file a petition for relief under the penalty for failure to comply with the terms of the bond.

Under date of November 4, 1946, the importer did request the Bureau to grant relief from liquidated damages under his term bond, and also asked for relief from the payment of duty on the merchandise.

Under date of March 21, 1947, the Bureau granted the importer's petition for remission of the penalty on his bond, but refused to grant any relief from the payment of duties, stating the Bureau was not authorized to grant any relief from duty because of importer's failure to comply with the terms of the bond and the Customs Regulations of 1943.

* * * attention is called to the following paragraph and sections of the law and Customs Regulations, and also to some court decisions under the Tariff Act of 1930.

Note Paragraph 1101 (a), 1101 (b) and section 33 (a) Administrative Act of 1938—T. D. 49646; sec. 558 (a) (b)
" 618
" 623

Customs Regulation 1943. Sec. 10.91 to 10.97 and their subsections;
T. D. 49267
C. D. 684

*　　*　　*　　*　　*　　*　　*

It appears the merchandise was entered under paragraph 1101 of the Tariff Act of 1930, as amended by sec. 33 (a), Customs Adminis-

trative Act of 1938 (19 U. S. C. § 1001, par. 1101), which provides free entry under bond for wool such as that here involved, conditioned upon its use in the manufacture of carpets, and other items enumerated in that paragraph; providing further that if not so used the duties expressed in that paragraph, in addition to certain penalties, would be payable.

Paragraph 1101, *supra*, so far as pertinent, reads as follows:

Par. 1101. (a) Wools: Donskoi, Smyrna, Cordova, * * *; and hair of the camel; all the foregoing, in the grease or washed, 24 cents per pound of clean content; * * * *Provided*, That a tolerance of not more than 10 per centum of wools not finer than 44s may be allowed in each bale or package of wools imported as not finer than 40s.

(b) Any of the foregoing may be entered or withdrawn from warehouse without the payment of duty by a manufacturer, processor, or dealer upon the filing of a bond to insure that any wool or hair entered or withdrawn thereunder shall be used only in the manufacture of press cloth, camel's hair belting, knot or felt boots, heavy fulled lumbermen's socks, rugs, carpets, or any other floor coverings. A manufacturer, processor, or dealer may be relieved of liability under his bond with respect to any wool or hair so entered or withdrawn which is transferred in its imported or any other form to another manufacturer, processor, or dealer who has filed a bond to insure'that the merchandise so transferred shall be used only in the manufacture of the above-enumerated articles. If any wool or hair so entered, withdrawn, or transferred under bond is used or transferred for use in its imported or any other form in any manner otherwise than in the manufacture of the articles enumerated above, there shall be levied, collected, and paid on the merchandise so used or transferred in violation of the bond the regular duties which would apply to such merchandise if imported in its condition at the time of such use or transfer. Such duties shall be paid by the manufacturer, processor, or dealer whose bond is charged with the wool or hair at the time of such use or transfer; but such duties shall not be levied or collected on any merchandise (except white soft wastes, white threads and noils, which shall be dutiable at seven-eighths of such regular duties when used or transferred for use otherwise than in the manufacture of the enumerated articles) resulting in the usual course of manufacture of such enumerated manufactured articles which cannot be used (with or without further preparation) in the usual course of the manufacture of such enumerated articles, or which is exported or destroyed. When any wool or hair which has been entered or withdrawn under bond as provided for in this subparagraph is used or transferred for use, in its imported or any other form, otherwise than in the manufacture of the above-enumerated articles and prior to such use or transfer there shall have been combined or mixed with such wool or hair any other merchandise, the whole or the combination or mixture shall be presumed to be composed of wool or hair entered or withdrawn under bond, as provided for in this subparagraph, unless the manufacturer, processor, or dealer liable for the payment of the duties shall establish the quantity of bonded wool or hair in such combination or mixture. Every manufacturer, processor, or dealer who has given a bond pursuant to the provisions of this subparagraph shall report any use or transfer of merchandise in violation of the terms of his bond, within thirty days after such use or transfer, to the collector of customs in whose district the bond is filed; and for failure to so report, such manufacturer, processor, or dealer shall be liable to a penalty equal to the value of the merchandise so used or transferred at the time and place of such use or transfer. Such penalty shall be in addition to the duties above provided for. The Secretary of the Treasury

is authorized to prescribe such regulations and the form, conditions, and amounts of such bonds as may be necessary to carry into effect the provisions of this subparagraph.

\* \* \* \* \* \* \*

Section 558 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, section 24 (19 U. S. C. § 1558), which prohibits refunds of customs duties with certain exceptions, reads as follows:

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(1) When articles are exported with respect to which a drawback of duties is expressly provided for by law;

(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe; and

(3) When articles entered under bond, under any provision of law, are destroyed within the bonded period as provided for in section 557 of this Act, or are destroyed within the bonded period by death, accidental fire, or other casualty, and proof of such destruction is furnished which shall be satisfactory to the Secretary of the Treasury, in which case any accrued duties shall be remitted or refunded and any condition in the bond that the articles shall be exported shall be deemed to have been satisfied.

(b) When articles are exported or destroyed under customs supervision after once having been released from customs custody, as provided for in subsection (c) of section 304 of this Act, such exportation or destruction shall not exempt such articles from the payment of duties other than the marking duty provided for in such subsection (c).

The Customs Court found that the wool was delivered to the importer and was placed in its warehouse which was not a bonded warehouse. Later the merchandise was exported from the premises where it had been stored. The court held that since such exportation was not made under customs supervision that there was no compliance with the appropriate customs regulations, viz., Article 10.97, Customs Regulations of 1943, which so far as pertinent, reads as follows:

10.97 Duties, exportation or destruction.—(a) All wool or hair in its imported form used or transferred for use otherwise than in the manufacture of the enumerated articles shall be assessed with duty in accordance with paragraph 1101 (b), Tariff Act of 1930, as amended. \* \* \*

The importer contended below that compliance with the above statutes and regulations was not mandatory since the involved merchandise was actually exported from this country. It also contended that since an export entry had to be made at the Customs House that the collector was thereby put upon his guard to see that the merchandise exported was as represented on the entry and was the exact merchandise that had been previously imported, alleging that

such action constituted customs supervision within the meaning of the statute. The Customs Court, in view of the pertinent statutes and regulations, found no merit in those contentions. We agree with such finding.

The Customs Court also held that the bond covering the merchandise could not be construed to mean that the government had any theoretical custody of the goods, pointing out that such bond represented simply a conditional exemption from the payment of duties, depending upon the use to which the merchandise was put and that nowhere did it call for either actual or constructive return of said merchandise to government custody should any of its terms be violated.

Under the facts of this case we feel the Customs Court was correct in its conclusion that

* * * The language of section 558, *supra*, is: "No * * * refund * * * of estimated or liquidated duty shall be allowed because of the exportation * * * after its release from the custody of the Government," with certain exceptions not here involved. All of the instant merchandise was released from customs custody and delivered to the importer. Under these circumstances, the refund of duties is prohibited. See *Hudson Shipping Co., Inc.* v. *United States*, 18 Cust. Ct. 17, C. D. 1038, and cases therein cited.

Since it is clear the involved merchandise was unconditionally released from customs custody and delivered to the importer, the Customs Court had no power or discretion to hold otherwise.

Before us, appellant contends that since it is conceded the exact merchandise was exported then it should be treated as a non-importation; however, no authority has been cited to support such contention. A careful search of the authorities, including reference to the very informative and interesting book, *Through the Customs Maze*, written by counsel for appellant, has not been productive of any support for appellant's contention.

For the reasons stated, the judgment of the United States Customs Court is *affirmed*.